ORIGINAL

1  BROWNE WOODS GEORGE LLP
   Eric M. George (State Bar No. 166403)
2  egeorge@bwgfirm.com
   Sonia Y. Lee (State Bar No. 191837)
3  slee@bwgfirm.com
   2121 Avenue of the Stars, 24th Floor
4  Los Angeles, CA 90067
   Tel: 310.274.7100 / Fax: 310.275.5697
5
6  Attorneys for Defendants
   COLLEGE LOAN CORPORATION, CARY
   KATZ and STEVEN SNYDER
7

FILED
2010 JAN 13 PM 3: 17
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

11  ROBERT LABRECHE,                    Case No. '10 CV 0094 JAH   WMc

12              Plaintiff,              DEFENDANTS' NOTICE OF
                                        REMOVAL OF ACTION UNDER 28
13       vs.                            U.S.C. § 1441(a)-(b); DECLARATION
                                        OF SONIA Y. LEE IN SUPPORT
14  COLLEGE LOAN                        THEREOF
    CORPORATION, CARY KATZ,
15  STEVEN SNYDER and DOES 1-50,

16              Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

240865_1.DOC

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants College Loan Corporation ("CLC"), a Nevada corporation, and Cary Katz, a Nevada resident, (collectively "Defendants") hereby remove to this Court the state court action described below pursuant to 28 U.S.C. § 1441(a)-(b).

1.     On September 24, 2009, Plaintiff Robert LaBreche ("Plaintiff") commenced an action in the Superior Court for the County of San Diego, entitled *Robert LaBreche v. College Loan Corporation, Cary Katz, Steven Snyder and Does 1-50*, SDSC Case No. 37-2009-00098983-CU-FR-CTL ("State Action").

2.     The first date upon which Defendants received a copy of the complaint in the State Action was October 2, 2009, when Defendants purportedly were served with a copy of the complaint and a summons.  True and correct copies of the Summons and Complaint are attached as Exhibit "A" to the Declaration of Sonia Y. Lee ("Lee Decl."), ¶ 2.

3.     On October 6, 2009, Plaintiff filed a First Amended Complaint ("FAC") for Damages and purported to served the FAC and summons.  True and correct copies of the Summons and FAC are attached as Exhibit "B" to the Lee Decl., ¶ 3.  Defendants have also included as Exhibit "B" to the Lee Decl. true and correct copies of the Notice of Case Assignment, Notice to Litigants/ADR Information Package, and Civil Case Cover Sheet.

4.     Defendants filed an Answer to the FAC on November 9, 2009.  A true and correct copy of the Answer is attached as Exhibit "C" to the Lee Decl., ¶ 4. Defendants are aware of no other documents contained in the State Action court file.

5.     On December 10, 14, and 15, 2009, Defendants took Plaintiff's deposition.  True and correct copies of the cover pages of the transcripts of Plaintiff's deposition are attached as Exhibit "D" to the Lee Decl., ¶ 5.  Copies of

-2-

1   the transcripts of the deposition were received by Defendants on January 4, 2010.

2   Lee Decl., ¶ 5.

3        6.    It was through receipt of Plaintiff's deposition transcripts that

4   Defendants first ascertained that the State Action is one which is removable.  Lee

5   Decl., ¶6.

6        7.    This Notice of Removal is timely under 28 U.S.C. §1446(b) because it

7   is filed within thirty (30) days of January 4, 2010, when Defendants first received

8   copies of the transcripts of Plaintiff's deposition.

9        8.    The FAC also names as a defendant Steven Snyder, an individual who

10  is a resident of the State of California.  The citizenship of defendant Snyder should

11  be disregarded for purposes of determining jurisdiction under 28 U.S.C. § 1332 and

12  28 U.S.C. § 1441(b) on the ground that there is no possibility that Plaintiff will be

13  able to establish liability against Snyder, and his joinder in the case is a sham

14  joinder done solely for the purpose of seeking to destroy diversity.

15       a.    "Joinder of a non-diverse defendant is deemed fraudulent, and

16  the defendant's presence in the lawsuit is ignored for purposes of determining

17  diversity, '[i]f the plaintiff fails to state a cause of action against a resident

18  defendant, and the failure is obvious according to the settled rules of the state.'"

19  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067(9th Cir. 2001).

20       b.    The FAC states a nominal cause of action under the First Cause

21  of Action Against All Defendants for a Sale of a Security Induced by

22  Misrepresentation of Material Fact, *California Corporations Code* §§ 25401,

23  25501, 25504, but there is no reasonable basis for imposing liability as made clear

24  by Plaintiff's express and unequivocal testimony given at his deposition.  The

25  undisputed facts regarding defendant Snyder's alleged conduct do not, and cannot

26  as a matter of law, constitute a violation of Corporations Code §§ 25401, 25501, or

27  25504, or under any other applicable state law.

28

-3-

9.      Venue lies in this Court pursuant to 28 U.S.C. §1441(a) because the Southern District of California embraces the place where the State Action is pending, i.e., the Superior Court of the State of California for the County of San Diego.

10.      Removal of this action from the Superior Court of the State of California to this Court is proper under 28 U.S.C. § 1441(a) because this Court would have had original jurisdiction of the action on the basis of diversity of citizenship, 28 U.S.C. §1332(a)(2), had the action originally been brought in this Court.

11.      Original jurisdiction on the basis of diversity of citizenship exists because:

a.      Plaintiff is a citizen of California, and was so at the time the FAC was filed.  Plaintiff alleges that he worked for Defendant CLC at its principal place of business in San Diego County.  FAC ¶ 6.

b.      Defendant CLC is a corporation organized and existing under the Private Corporations Law of Nevada, and was at the time the FAC was filed. FAC ¶ 1.  CLC's principal place of business is Nevada and was so at the time the FAC was filed.

c.      Defendant Cary Katz is a natural person and resident of the State of Nevada, and was at the time the FAC was filed.  FAC ¶ 2.

d.      Defendant Snyder is a natural person and resident of the State of California, and was at the time the FAC was filed, but his domicile may be ignored because Plaintiff has fraudulently joined Snyder in an attempt to defeat federal jurisdiction.

e.      The claims alleged by Plaintiff exceed the sum of $75,000, as required by 28 U.S.C. § 1332(a).  Plaintiff requests damages of at least $4,500,000. FAC ¶ 19.

-4-

12.     Written notice of the filing of this Notice of Removal will be given to Plaintiff concurrently with the filing of this Notice of Removal.

13.     A true and correct copy of the Notice of Removal will be filed with the Clerk of the Superior Court of California for the County of San Diego concurrently with the filing of this Notice.

14.     This Notice of Removal is filed by all Defendants, with the exception of defendant Snyder, who was named solely for the purposes of preventing removal.  Snyder does not object to the removal.

Dated:  January 13, 2010          BROWNE WOODS GEORGE LLP
                                  Eric M. George
                                  Sonia Y. Lee


                                  By _____
                                       SONIA Y. LEE


                                  Attorneys for Defendants
                                  COLLEGE LOAN CORPORATION, CARY
                                  KATZ, STEVEN SNYDER

240865_1.DOC

DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a)-(b); DECLARATION OF
SONIA Y. LEE IN SUPPORT THEREOF

# DECLARATION OF SONIA Y. LEE

I, Sonia Y. Lee, declare:

1.     I am an attorney at law, duly admitted to practice before this Court and all courts of the State of California.  I have firsthand, personal knowledge of the matters set forth below, and if called upon to testify to them, I could competently do so.

2.     True and correct copies of the Summons and Complaint from the action entitled *Robert LaBreche v. College Loan Corporation, Cary Katz, Steven Snyder and Does 1-50*, filed in the Superior Court of the State of California, County of San Diego, SDSC Case No. 37-2009-00098983-CU-FR-CTL ("State Action"), which were purportedly served on defendants College Loan Corporation and Cary Katz (collectively, "Defendants") are attached hereto as Exhibit "A".

3.     True and correct copies of the Summons and First Amended Complaint ("FAC") from the State Action are attached hereto as Exhibit "B".

4.     A true and correct copy of the Answer filed by Defendants to the FAC is attached hereto as Exhibit "C".

5.     True and correct copies of the cover pages of the transcripts of the Deposition of Plaintiff Robert LaBreche ("Plaintiff"), taken on December 10, 14, and 15 are attached hereto as Exhibit "D".  The transcripts were received by my office on January 4, 2010, as indicated by the "Received" stamp.

6.     It was through receipt of these transcripts that Defendants first ascertained that the State Action is one which is removable.  In particular, Plaintiff's undisputed testimony establishes that Plaintiff has failed to – and cannot – state a cause of action against defendant Snyder, and the failure is obvious according to the settled rules of the state.

1       I declare under penalty of perjury under the laws of the United States that the

2 foregoing is true and correct.

3       Executed this 13th day of January, 2010, at Los Angeles, California.

4

5                 Sonia Y. Lee

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

240865_1.DOC

DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a)-(b); DECLARATION OF
SONIA Y. LEE IN SUPPORT THEREOF

**EXHIBIT A**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):
*College Loan Corporation,*
*Cary Katz, Steven Snyder and DOES 1 to 25*

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):

Robert LaBreche

FILED
CIVIL BUSINESS OFFICE
CENTRAL DIVISION

2009 SEP 24  PM 3: 17

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**RECEIVED**

OCT 0 2 2009

Browne Woods George LLP

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: (El nombre y dirección de la corte es): Superior Court of San Diego County, CA | CASE NUMBER: (Número del Caso): 37-2009-00098983-CU-FR-CTL |
|---|---|

330 West Broadway
San Diego, CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Gerald Burleson, 5752 Oberlin Drive, Suite 106, San Diego, CA 92121, tel. (858)

| DATE: (Fecha) SEP 2 4 2009 | Clerk, by B. Orihuela (Secretario) | , Deputy (Adjunto) |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☑ by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com



# EXHIBIT A

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY AND ZIP CODE: San Diego, CA 92101 | |
| BRANCH NAME: Central | |
| TELEPHONE NUMBER: (619) 450-7067 | |

**PLAINTIFF(S) / PETITIONER(S):**   Robert Labreche

**DEFENDANT(S) / RESPONDENT(S):**  College Loan Corporation et.al.

LABRECHE VS. COLLEGE LOAN CORPORATION

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: 37-2009-00098983-CU-FR-CTL |
|---|---|

Judge:  David B. Oberholtzer                        Department: C-67

**COMPLAINT/PETITION FILED:** 09/24/2009

## CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

CASE NUMBER: 37-2009-00098983-CU-FR-CTL        CASE TITLE: Labreche vs. College Loan Corporation

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court Local Rules Division II Chapter 3 and Code of Civil Procedure 1141 et seq. address this program specifically.

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

| | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | |
| STREET ADDRESS:       330 West Broadway | |
| MAILING ADDRESS:      330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:       Central | |

| PLAINTIFF(S):    Robert Labreche |
|---|
| DEFENDANT(S): College Loan Corporation et.al. |
| SHORT TITLE:   LABRECHE VS. COLLEGE LOAN CORPORATION |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER:<br>37-2009-00098983-CU-FR-CTL |
|---|---|

Judge: David B. Oberholtzer                                    Department: C-67

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative  dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐  Court-Referred Mediation Program                    ☐  Court-Ordered Nonbinding Arbitration

☐  Private Neutral Evaluation                          ☐  Court-Ordered Binding Arbitration (Stipulated)

☐  Private Mini-Trial                                  ☐  Private Reference to General Referee

☐  Private Summary Jury Trial                          ☐  Private Reference to Judge

☐  Private Settlement Conference with Private Neutral  ☐  Private Binding Arbitration

☐  Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)  _____

_____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____          Date: _____

_____                 _____
Name of Plaintiff                            Name of Defendant

_____                 _____
Signature                                    Signature

_____                 _____
Name of Plaintiff's Attorney                 Name of Defendant's Attorney

_____                 _____
Signature                                    Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 09/24/2009                    _____
                                     JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)          STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION                    Page: 1

3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Gerald Burleson, State Bar No. 145838<br>5752 Oberlin Drive, Suite 106<br>San Diego, CA 92121<br><br>TELEPHONE NO: (858) 794-4805   FAX NO: (866) 885-6079<br>ATTORNEY FOR *(Name)*: Plaintiff, ROBERT LABRECHE | FILED<br>CIVIL BUSINESS OFFICE<br>CENTRAL DIVISION<br><br>2009 SEP 24 PM 3:17<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: CENTRAL DIV.

CASE NAME:
Robert LaBreche v. College Loan Corporation, et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2009-00098983-CU-FR-CTL<br><br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[✓] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify)*: 4
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 24, 2009
Gerald Burleson
_____
(TYPE OR PRINT NAME)

*(signature)*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Gerald Burleson, State Bar No. 145838<br>5752 Oberlin Drive, Suite 106<br>San Diego, CA 92121 | **FILED**<br>**CIVIL BUSINESS OFFICE**<br>**CENTRAL DIVISION** |
| TELEPHONE NO.: (858) 794-4805   FAX NO.: (866) 885-6079 | **2009 SEP 24  PM 3:17** |
| ATTORNEY FOR *(Name)*: Plaintiff, ROBERT LABRECHE | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: CENTRAL DIV.

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

CASE NAME:
Robert LaBreche v. College Loan Corporation, et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2009-00098983-CU-FR-CTL<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☑ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive

4. Number of causes of action *(specify)*: 4

5. This case ☐ is ☑ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 24, 2009
Gerald Burleson
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

1 | Gerald P. Burleson, State Bar No. 145838
5752 Oberlin Drive, Suite 106
2 | San Diego, CA 92121
Telephone: (858) 794-4805
3 | Fax: (866) 885-6079

FILED
CIVIL BUSINESS OFFICE 4
CENTRAL DIVISION

2009 SEP 24  PM 3: 17

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| ROBERT LABRECHE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>COLLEGE LOAN CORPORATION, CARY KATZ, STEVEN SNYDER and DOES 1-50<br><br>　　　　　Defendants | No.　**37-2009-00098983-CU-FR-CTL**<br><br>COMPLAINT FOR DAMAGES<br>(Sale of Security Induced by Misrepresentation of Material Fact, Corp C §§25401, 25501, 25504, 25504.1; Breach of Fiduciary Duty by Majority Shareholder, Director and Officer; Intentional Misrepresentation and Suppression of Material Facts; and, Negligent Misrepresentation) |

Plaintiff alleges:

1. Defendant COLLEGE LOAN CORPORATION is a corporation organized and existing under the Private Corporations Law of Nevada. That Nevada corporation is the surviving corporation following a merger between the Nevada corporation and a California corporation also named College Loan Corporation. The Nevada corporation is hereinafter referred to as "CLC-NV" and the California corporation is hereinafter referred to as "CLC-CA". When the merger took effect, all of the following occurred: CLC-CA merged into CLC-NV, and the separate existence of CLC-CA ceased; the title to all property owned by CLC-CA vested in CLC-NV without reversion or impairment; and, CLC-NV had all of the liabilities of CLC-CA. Plaintiff therefore sues CLC-NV on the liabilities of CLC-CA as described in the causes of

1

Complaint

1    action in this complaint.  This court has jurisdiction over CLC-NV because this is a tort action

2    arising from acts of CLC-CA in California.

3     2.  Defendant CARY KATZ ("Katz") is a natural person and a resident of the State of Nevada.

4    This court has jurisdiction over Katz because this is a tort action arising from acts of Katz in

5    California.

6     3.  Defendant STEVEN SNYDER ("Snyder") is a natural person and is a resident of and

7    domiciled in the State of California.

8     4.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-

9    50, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend

10    this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed

11    and believes and thereon alleges that each of these fictitiously named defendants is responsible in

12    some manner for the occurrences herein alleged, and that plaintiff's damages and injuries as

13    herein alleged were proximately caused by the aforementioned defendants.

14     5.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each

15    of the defendants was the agent and employee of each of the remaining defendants and, in doing

16    the things hereinafter alleged, was acting within the course and scope of such agency and

17    employment.

18          <u>GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION</u>

19     6.  Until its recent dissolution by merger, CLC-CA was a California corporation based in San

20    Diego County, California focused on the higher education market.  CLC-CA's business activities

21    consisted primarily of originating and holding private student loans and also Federal Family

22    Education Loan Program student loans ultimately backed by the U.S. Department of Education.

23    In February, 2000 plaintiff was hired by CLC-CA as the Vice President of Marketing in its

24    consumer marketing division at CLC-CA's principal place of business in San Diego County,

25    California.  Plaintiff eventually was promoted to the position of President of Consumer

26    Marketing and was responsible for a staff of 200-300 employees in his department.  Plaintiff

27    worked for CLC-CA for almost eight years, until November 12, 2007 when he was terminated as

28    part of a significant reduction in CLC-CA's workforce resulting from changes in the student loan

industry.

2

Complaint

7. While employed at CLC-CA, plaintiff was granted stock options to purchase shares of the common stock of the company under the company's stock option plan adopted under section 422 of the Internal Revenue Code. Plaintiff eventually became the owner of 300,000 shares of CLC-CA's common stock

8. At all times relevant to the causes of action alleged herein, CLC-CA was qualified under applicable provisions of the Internal Revenue Code as a Subchapter S corporation. Accordingly, its items of net income and loss have always been reported on the shareholders' individual income tax returns. Katz was the founder of CLC-CA and he was the company's majority shareholder, having beneficial ownership of at least 84.44% of the company's outstanding common shares during the times relevant to this complaint. Katz was, at all relevant times, the Chief Executive Officer of CLC-CA and a member of the company's Board of Directors. Snyder was, at all relevant times, the Executive Vice President of CLC-CA and a member of the company's Board of Directors.

9. On December 3, 2008 CLC-CA submitted a written offer to purchase the common stock held by current and former employees of the company, including plaintiff's shares, at the purchase price and on the other terms described in the offer. Plaintiff believed that the offer was far below the true value of the company's shares and he was not willing to participate in it. On January 5, 2009, by way of a third supplement to its offer to purchase, the company increased the purchase price it was offering for the shares of its common stock held by its current and former employees, although plaintiff still believed the offer was far below the true value of the shares and he remained uninterested in selling.

## I. FIRST CAUSE OF ACTION
(Against all Defendants for Sale of a Security Induced by Misrepresentation of Material Fact, Corp C §§25401, 25501, 25504)

10. Plaintiff incorporates in this cause of action the allegations of paragraphs 1-9 of the complaint.

11. CLC-CA's offer to purchase its common stock from current and former employees provided only summary profit and loss and balance sheet data for the first nine months of 2008, although the company was involved in financial transactions during the last quarter of the year

3

Complaint

that significantly impacted its financial performance for the entire year. Some of those transactions were only obliquely referred to in a January 5, 2009 third supplement to the company's offer. Plaintiff and many of the other current and former employee shareholders were in no position to evaluate the impact of those transactions on the company's financial performance for the year.

12. The third supplement to CLC-CA's offer to purchase its common stock contained the following information concerning certain transactions involving the purchase and cancellation of notes from investors in the open market:

> The College Loan Corporation Trust I and College Loan Corporation Trust II (collectively the "Trusts") have purchased notes from investors on the open market at prices below face value and subsequently cancelled those notes. As of December 19, 2008, the Trusts purchased $30,925,000 in outstanding notes for $23,719,250. Since that time, the Trusts have purchased an additional $62,700,000 in outstanding notes for $43,263,000. The Trusts may continue to purchase additional notes at prices below face value in the future. See the discussion under the heading *"Purchase and Cancellation of Notes"* in the first Supplement, as modified by the Second Supplement.

13. On January 15, 2009 CLC-CA emailed each of its shareholders, including plaintiff, an estimate of the shareholder's share of the company's pass-through income and loss for the year ended 2008. The document sent to plaintiff had the following heading:

> Shareholder Summary of State Withholding Tax-Updated for 12.31.08 transactions
> College Loan Corporation
> For the Tax Year Ended December 31, 2008
>
> Shareholder             Robert LaBreche
> Ownership %             2.5964%

The shareholder summary document CLC-CA emailed to plaintiff informed him that his share of estimated total taxable income of the company for the tax year ended December 31, 2008 was $908,495.00. CLC-CA had made no distributions of income to its shareholders during 2008. Plaintiff assumed that the estimate in the shareholder summary document of his share of the company's 2008 taxable income included the effects of all transactions the company had been involved in for that year, including those transactions described in the third supplement to CLC-

4

Complaint

1   CA's offer to purchase its common stock from its current and former employees.  Plaintiff had

2   neither the professional background and expertise nor sufficient information to make his own

3   calculation of the impact on the company's financial statements of the transactions involving the

4   purchase and cancellation of the notes from investors in the open market that were described in

5   the third supplement to the company's offer to purchase its stock, and he assumed that CLC-CA

6   had done that in preparing the estimate of his pass-through tax liability.

7   14. The deadline for each of the current and former employees of CLC-CA to accept the

8   company's offer to purchase their shares was January 21, 2009.  In numerous telephone

9   conversations during the week prior to the deadline Katz pressured plaintiff to sell his stock,

10   informing plaintiff that the company expected to have a lot of tax liability for 2009 and that there

11   was no assurance that there would be any distributions to the shareholders to allow them to pay

12   their share of the tax liability.  The clear implication from Katz's comments during the calls was

13   that if plaintiff refused to sell his shares, Katz would use his power as the majority shareholder to

14   prevent the corporation from making distributions, even if the corporation was having a

15   profitable year and was able to make them, but that plaintiff would be faced with paying income

16   taxes on his share of the company's pass-through income even though he never would receive

17   any of it.  Then, shortly before the offer deadline, Snyder telephoned plaintiff and during a

18   lengthy telephone conversation he urged plaintiff to accept the company's offer and asked

19   plaintiff several times if he really wanted to risk personal bankruptcy by holding on to his stock

20   when there was no assurance that there would be any distributions by the company to cover the

21   expected "phantom income" that the shareholders would have to pay taxes on for 2009.

22   15. Plaintiff consulted with his C.P.A. concerning his tax exposure in light of the estimate he

23   had received from the company of his share of CLC-CA's pass-through income and loss for

24   2008 and concluded that, in light of his other 2008 tax events, his income tax exposure for the

25   year was minimal.  In light of such determination plaintiff calculated that if he accepted the

26   company's offer to purchase his shares, although he did not want to do so and felt coerced,

27   extorted and pressured to do so by the veiled threats of bankruptcy if he did not accept the offer,

28   he would make at least enough on the transaction after taxes, including income taxes on his share

of CLC-CA's 2008 pass-through income, to allow him to move on with his life and put this

5

Complaint

1  sordid episode behind him.  Plaintiff reluctantly acquiesced to the pressure and the veiled threats

2  he was getting from the company, its majority shareholder and its executive officers, and

3  plaintiff accepted the company's offer to purchase his shares in CLC-CA and sold his shares

4  back to the company.

5    16.  In April, 2009 CLC-CA sent plaintiff his Form K-1 reflecting that plaintiff's actual share of

6  the company's pass-through income for 2008 was $1,654,158.  Plaintiff was facing income tax

7  liability for 2008 of several hundred thousand dollars rather than the minimal income tax liability

8  he expected based on the estimate of his share of CLC-CA's pass-through income for 2008 he

9  was given by the company in January.

10    17.  CLC-CA's purchase of plaintiff's shares of the company's stock was by the means of a

11  written communication which included an untrue statement of a material fact in that by sending

12  the document to plaintiff, defendant represented that the estimate of the plaintiff's share of the

13  company's pass-through income and loss for the year ended 2008 as set forth in the shareholder

14  summary document was a reasonable estimate.  However, as described above in this complaint,

15  such estimate was unreasonably and grossly understated and untrue.  Further, CLC-CA's

16  purchase of plaintiff's shares of the company's stock was by the means of a written

17  communication which omitted to state material facts necessary in order to make the statements

18  made, in light of the circumstances under which they were made, not misleading, in that, (i) as

19  described above, CLC-CA omitted to report profit and loss and balance sheet data for the last

20  quarter of 2008 although the omission of such data made the profit and loss data and balance

21  sheet data reported in the offer misleading since the company had been involved in significant

22  financial transactions during the last quarter that materially impacted the company's financial

23  performance for the entire year; (ii) the third supplement to the company's offer disclosed certain

24  significant transactions involving the purchase and cancellation of notes from investors in the

25  open market, as described above, but it omitted to state how those transactions impacted the

26  company's financial statements and its performance, and plaintiff did not have the expertise nor

27  sufficient information to make his own calculation of the impact of those transactions on the

28  company's financial statements or its performance; (iii) the company's offer failed to disclose

that the company's directors and executive officers knew that the company would make highly

6

Complaint

1  extraordinary profits in 2009 from transactions that were already planned; and, (iv) the

2  company's offer failed to disclose that CLC-CA intended to merge with CLC-NV and that CLC-

3  CA would cease to exist and that such merger, and the transactions planned by the company in

4  anticipation of the merger, were highly likely to significantly increase the value of the

5  company's shares, although this information was known by the company's directors and

6  executive officers.

7  18. Plaintiff did not know that the CLC-CA's estimate of the plaintiff's share of the company's

8  pass-through income and loss for the year ended 2008 as set forth in the shareholder summary

9  document was untrue and was not a reasonable estimate. Further, plaintiff did not know (i) that

10  CLC-CA's omission to report profit and loss and balance sheet data for the last quarter of 2008;

11  (ii) that CLC-CA's omission to state how the transactions involving the purchase and

12  cancellation of notes from investors in the open market impacted the company's financial

13  statements; (iii) that CLC-CA's failure to disclose that the company's directors and executive

14  officers knew that the company would make highly extraordinary profits in 2009 from

15  transactions that were already planned; and, (iv) that CLCA'S failure to disclose that the

16  company intended to merge with CLC-NV and that CLC-CA would cease to exist and that such

17  merger, and the transactions planned by the company in anticipation of the merger, were highly

18  likely to affect the value of their shares, made the company's other statements misleading. If

19  plaintiff had known that the CLC-CA's estimate of the plaintiff's share of the company's pass-

20  through income and loss for the year ended 2008 was untrue and was not a reasonable estimate

21  and if plaintiff had known that the material facts omitted by CLC-CA made the company's other

22  statements misleading, plaintiff would not have sold his CLC-CA stock to the company.

23  19. CLC-CA's conduct as described in this complaint was in violation of §25401 of the

24  Corporations Code and CLC-NV is liable to plaintiff for damages as specified under §25501 of

25  the Corporations Code, since CLC-CA ceased to exist when the merger took effect and CLC-

26  NV, as the surviving corporation, has all of CLC-CA's liabilities. Plaintiff is entitled to recover

27  the difference between (1) the value of his shares in CLC-CA at the time of the filing of the

28  complaint plus the amount of any income received on them since the sale and (2) the price at

which the security was sold plus interest at the legal rate from the date of sale. On information

7

Complaint

1  and belief, plaintiff alleges that his damages are at least $4,500,000. Plaintiff seeks damages

2  according to proof.

3    20. At all relevant times Katz directly or indirectly controlled CLC-CA by virtue of his

4  beneficial ownership of a majority of the shares of the company, and he was a principal

5  executive officer and a director of the company at all relevant times. Snyder was a principal

6  executive officer and a director of the company at all relevant times. Further, by their actions as

7  alleged herein, Katz and Snyder materially assisted CLC-CA in its violation of §25401 of the

8  Corporations Code. Under §§25504 and 25504.1 of the Corporations Code, Katz and Snyder are

9  also liable for plaintiff's damages jointly and severally with and to the same extent as CLC-NV.

10                   II. SECOND CAUSE OF ACTION
      (Against Katz for Breach of his Fiduciary Duties as Majority Shareholder, as a Director and as
11                          an Officer of CLC-CA)

12    21. Plaintiff incorporates in this cause of action the allegations of paragraphs 1-20 of the

13  complaint.

14    22. As a result of his power as the majority shareholder of CLC-CA, Katz could and did

15  control every aspect of the management of CLC-CA. The corporation's other officers and

16  directors essentially served at his pleasure and did his bidding. Snyder's telephone call to

17  plaintiff in which Snyder threatened plaintiff with bankruptcy if plaintiff did not accept the

18  company's offer to buy plaintiff's shares was instigated by Katz to achieve his own purpose and

19  end, which was to force plaintiff to sell his shares back to the company at a price far below their

20  true value.

21    23. CLC-CA used the device of incentive stock options as a tax advantageous way to enhance

22  an employee's compensation, to retain employees long-term, and to inspire loyalty and

23  dedication by employees and make the company more profitable. But Katz used his power as

24  the majority shareholder to deny employee shareholders a fair share of the corporate profits and

25  its ongoing value. The corporation's Subchapter S tax status was a handy tool for Katz to use as

26  a sword to coerce and control employee and former employee shareholders for his own ultimate

27  financial benefit. When the company had a profitable year, Katz was able to control and

28  determine whether or not the company distributed earnings to the shareholders and how much

Complaint

would be distributed. However, whether or not the company made a distribution to shareholders, each shareholder was nevertheless obligated to pay income tax on his or her share of the company's pass-through income and loss each year. If the company for any reason did not make a distribution sufficient to cover each shareholder's share of the company's pass-through income and loss, it might loan funds to the shareholders to enable them to pay their taxes and take back promissory notes. There was a limited market for shares in CLC-CA, and the company's shares were unregistered and subject to elaborate restrictions under a shareholder agreement that all of the company's shares were immediately subject to upon issuance. The shareholder agreement gave CLC-CA an option to purchase the shares of employee shareholders on termination of their employment with the company, whether voluntary or involuntary, and the company could, if it chose, pay the majority of the purchase price over five years; however, the company was not obligated to purchase an employee's shares on termination, and frequently it did not exercise the purchase option on termination of an employee. In that situation, if no shareholder then desired to purchase a terminated employee's shares, the former employee shareholder could only sell to an outside party after (i) obtaining the written permission of the company and all of the other shareholders to do so; (ii) offering the shares to the company for the same price as had been offered to the former employee shareholder by the outside party; and, (iii) if the company elected to buy the former employee's shares at the price offered by the outside party it could, if it chose, pay the majority of the purchase price over five years even if the outside party had offered to pay the purchase price in cash. This created a situation that was rife with opportunities for abuse by the majority shareholder, and Katz took advantage of it when CLC-CA made the offer to purchase the shares of its current and former employees.

24. At the time of CLC-CA's offer to purchase the shares of its current and former employees, most of the offerees, including the plaintiff, were former employees of the company who were involuntarily terminated in a rift during 2007. With respect to those offerees, the company had chosen not to exercise its option to purchase their shares under the shareholder agreement when they were terminated. Had it exercised its option to purchase their shares, the company would have been required to pay the fair market value of the shares as most recently determined by an independent valuation done for the trustee of the company's employee stock ownership plan.

9

Complaint

1   Since CLC-CA's option to purchase the shares of the former employee shareholders had already

2   expired at the time of CLC-CA's offer, those offerees had the right to retain ownership of their

3   shares in the company, and they were not under any obligation to accept the company's offer to

4   buy their stock.

5   25.   Like many of the other similarly situated offerees, in the face of the company's offer to

6   purchase the plaintiff's shares plaintiff was whipsawed by the veiled threats by the majority

7   shareholder, and by the express threats communicated to him by Snyder at the behest of Katz,

8   that plaintiff would find himself in an impossible financial situation and would be bankrupted if

9   he refused the company's offer:  Katz could and very well might use his power as the majority

10   shareholder to nix any distributions to the shareholders even if the company had a profitable

11   year, but the shareholders would remain obligated to pay potentially draconian income taxes on

12   their respective shares of the company's pass-through income and loss for 2009 and in future

13   years.

14   26.  In acting as described above, Katz breached his fiduciary duty owed to plaintiff and the

15   other minority shareholders to use his ability to control the corporation in a just, fair and

16   equitable manner.  Instead, Katz used his power to control the corporation to promote a scheme

17   that primarily benefitted himself to the detriment of plaintiff and the other minority shareholders.

18   Further, Katz knew about the untrue statements of material fact made by or in behalf of CLC-

19   CA, and about the omissions to state material facts necessary in order to make the statements

20   made by or in behalf of CLC-CA, in light of the circumstances under which they were made, not

21   misleading, in connection with the purchase of plaintiff's shares of the company's stock and

22   Katz failed to disclose that information to plaintiff or to any of the other employee and former

23   employee shareholders.  Katz's failure to disclose such material facts to plaintiff and the other

24   offeree/sellers, and his suppression and failure to disclose the omissions to state material facts,

25   constituted a breach of his fiduciary duties as a director and officer of the company.

26   27.  As a proximate result of the acts of Katz, as above described, plaintiff has suffered

27   damages.   On information and belief, plaintiff alleges that his damages are at least $4,500,000.

28   Plaintiff seeks damages according to proof.

10

Complaint

28.  The aforementioned conduct of Katz was done with the intention of depriving plaintiff and the other minority shareholders of property or legal rights or otherwise causing injury to plaintiff, and was despicable conduct that subjected the plaintiff to a cruel and unjust hardship in conscious disregard of the plaintiff's rights, and was an intentional misrepresentation, deceit or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving the plaintiff of property or legal rights or otherwise causing injury, so as to justify an award of exemplary and punitive damages.

### III.  THIRD CAUSE OF ACTION
(Against CLC-NV for CLC-CA's Intentional Misrepresentation and Suppression of Material Facts)

29.  Plaintiff incorporates in this cause of action the allegations of paragraphs 1-28 of the complaint.

30.  CLC-CA's purchase of plaintiff's shares was induced by representations made by the company, acting through its directors and officers, that were false, and by representations that omitted to state material facts that made statements actually made misleading and untrue.

31.  When such statements were made, CLC-CA, acting through its directors and officers, knew such representations to be false and knew that such statements actually made were misleading and untrue in light of the omissions to state material facts.

32.  When such statements were made, CLC-CA, acting through its directors and officers, made the false representations and the representations that omitted to state material facts that made statements actually made misleading and untrue with the intention to deceive and defraud the plaintiff and to induce the plaintiff to act in reliance on such representations and misleading and untrue statements and accept the company's offer to buy plaintiff's shares of stock.

33.  At the time these false representations were made and at the time the misleading and untrue statements were made and at the time plaintiff acted in reliance upon them, plaintiff was ignorant of their falsity and untruth and believed them to be true.  In reliance upon such representations and statements, the plaintiff was induced to and did accept the company's offer to buy plaintiff's shares of stock.  Had the plaintiff known the actual facts, he would not have taken such action. The plaintiff's reliance on the company's representations and statements was justified because

11

Complaint

1 | plaintiff had no other source of information regarding the facts relevant to his decision to accept

2 | the company's offer.

3 | 34. As a proximate result of the fraudulent conduct of the company, acting through its directors

4 | and officers as alleged herein, the plaintiff was damaged in an amount according to proof. On

5 | information and belief, plaintiff alleges that his damages are at least $4,500,000.

6 | 35. The aforementioned conduct of CLC-CA, acting through its directors and officers, was

7 | done with the intention of depriving plaintiff of property or legal rights or otherwise causing

8 | injury, was despicable conduct that subjected the plaintiff to a cruel and unjust hardship in

9 | conscious disregard of the plaintiff's rights, and was an intentional misrepresentation, deceit or

10 | concealment of a material fact known to the defendant with the intention on the part of the

11 | defendant of thereby depriving the plaintiff of property or legal rights or otherwise causing

12 | injury, so as to justify an award of exemplary and punitive damages.

13 | IV.  FOURTH CAUSE OF ACTION
(Against CLC-NV for CLC-CA's Negligent Misrepresentation of Facts)

14 |

15 | 36. Plaintiff incorporates in this cause of action the allegations of paragraphs 1-35 of the

16 | complaint.

17 | 37. When CLC-CA, acting through its directors and officers, made these representations and

18 | misleading and untrue statements, it had no reasonable ground for believing them to be true.

19 | 38. When CLC-CA, acting through its directors and officers, made these representations and

20 | misleading and untrue statements, it did so with the intention of inducing the plaintiff to act in

21 | reliance on them and accept the company's offer to buy plaintiff's shares of stock.

22 | 39. As a proximate result of the conduct of the company, acting through its directors and

23 | officers as alleged herein, the plaintiff was damaged in an amount according to proof. On

24 | information and belief, plaintiff alleges that his damages are at least $4,500,000.

25 | DEMAND FOR JUDGMENT

26 | WHEREFORE, plaintiff demands judgment as follows:

27 | (1) On the first cause of action, plaintiff demands judgment against defendants CLC-NV, Cary

28 | Katz and Steven Snyder, jointly and severally, for damages in an amount according to proof, for

12

Complaint

1   interest on the judgment as allowed by law from the date of judgment until paid and for costs of

2   suit;

3   (2)  On the second cause of action, plaintiff demands judgment against defendant Cary Katz for

4   actual damages in an amount according to proof, for exemplary and punitive damages in an

5   amount determined by the court or jury, for interest on the judgment as allowed by law from the

6   date of judgment until paid and for costs of suit;

7   (3)  On the third cause of action, plaintiff demands judgment against defendant CLC-NV for

8   actual damages in an amount according to proof , for exemplary and punitive damages in an

9   amount determined by the court or jury, for interest on the judgment as allowed by law from the

10   date of judgment until paid and for costs of suit;

11   (4)  On the fourth cause of action, plaintiff demands judgment against defendant CLC-NV for

12   actual damages in an amount according to proof, for interest on the judgment as allowed by law

13   from the date of judgment until paid and for costs of suit.

14   Plaintiff further seeks such other and further relief as the court deems proper.

15   Respectfully submitted,

16

17   *Gerald P. Burleson*

18   Gerald P. Burleson
     Attorney for Plaintiff
19   ROBERT LABRECHE

20

21

22

23

24

25

26

27

28

13

Complaint

# EXHIBIT B

*FIRST AMENDED*

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

FILED
CIVIL BUSINESS OFFICE 13

2009 OCT -6 | P 12: 17

_____ COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
*College Loan Corporation*
*Cary Katz, Steven Snyder and*
*DOES 1-50*

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
*Robert LaBreche*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es): | (Número del Caso): 37-2009-00098983-CU-FR-CTL |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
☒ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792

*tel. (858) 794-4805*
*Bar # 45838*
*Gerald P. Burleson*
*5752 Oberlin Dr. #106*
*San Diego, CA 92121*

The name, address, bar #, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

| | CLERK OF THE SUPERIOR COURT |
|---|---|
| DATE: **OCT 0 6 2009** | Clerk, by **SANDRA VILLANUEVA** , Deputy |
| (Fecha) | (Secretario) (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. ☒ as an individual defendant. *Steven Snyder*
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☒ by personal delivery on (date): *10/6/2009*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465



# EXHIBIT B

310641624-7

P.2

Oct 12 09 08:04a

1    Gerald P. Burleson, State Bar No. 145838
     5752 Oberlin Drive, Suite 106
2    San Diego, CA 92121
     Telephone: (858) 794-4805
3    Fax: (866) 885-6079



4

5

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF SAN DIEGO, CENTRAL DIVISION

10

| | |
|---|---|
| 11   ROBERT LABRECHE, | No. 37-2009-00098983-CU-FR-CTL |
| 12         Plaintiff, | FIRST AMENDED COMPLAINT FOR DAMAGES |
| 13     vs. | (Sale of Security Induced by Misrepresentation of Material Fact, Corp C §§25401, 25501, 25504, 25504.1; Breach of Fiduciary Duty by Majority Shareholder, Director and Officer; Intentional Misrepresentation and Suppression of Material Facts; and, Negligent Misrepresentation) |
| 14   COLLEGE LOAN CORPORATION, CARY | |
| 15   KATZ, STEVEN SNYDER and DOES 1-50. | |
| 16        Defendants | |
| 17 | Judge: Hon. David B. Oberholtzer |
| 18 | Dept.: C-67<br>Complaint filed: 9-24-09<br>Trial: Not set |

19   For Amended Complaint, and as of course, Plaintiff alleges:

20    1. Defendant COLLEGE LOAN CORPORATION is a corporation organized and existing

21 under the Private Corporations Law of Nevada. That Nevada corporation is the surviving

22 corporation following a merger between the Nevada corporation and a California corporation

23 also named College Loan Corporation. The Nevada corporation is hereinafter referred to as

24 "CLC-NV" and the California corporation is hereinafter referred to as "CLC-CA". When the

25 merger took effect, all of the following occurred: CLC-CA merged into CLC-NV, and the

26 separate existence of CLC-CA ceased; the title to all property owned by CLC-CA vested in

27 CLC-NV without reversion or impairment; and, CLC-NV had all of the liabilities of CLC-CA.

28 Plaintiff therefore sues CLC-NV on the liabilities of CLC-CA as described in the causes of

1

First Amended Complaint

1   action in this complaint. This court has jurisdiction over CLC-NV because this lawsuit arises

2   from acts of CLC-CA, acting through its directors, officers, executive employees and agents, that

3   took place in California.

4     2. Defendant CARY KATZ ("Katz") is a natural person and a resident of the State of Nevada.

5   At all times relevant to the causes of action alleged herein Katz was a resident of and domiciled

6   in California. This court has jurisdiction over Katz because the acts of Katz alleged herein

7   occurred in California.

8     3. Defendant STEVEN SNYDER ("Snyder") is a natural person and is a resident of and

9   domiciled in the State of California. The acts of Snyder alleged herein occurred in California.

10    4. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-

11   50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend

12   this complaint to allege their true names and capacities when ascertained. Plaintiff is informed

13   and believes and thereon alleges that each of these fictitiously named defendants is responsible in

14   some manner for the occurrences herein alleged, and that plaintiff's damages and injuries as

15   herein alleged were proximately caused by the aforementioned defendants.

16    5. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each

17   of the defendants was the agent and employee of each of the remaining defendants and, in doing

18   the things hereinafter alleged, was acting within the course and scope of such agency and

19   employment.

20        <u>GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION</u>

21    6. Until its recent dissolution by merger, CLC-CA was a California corporation based in San

22   Diego County, California focused on the higher education market. CLC-CA's business activities

23   consisted primarily of originating and holding private student loans and also Federal Family

24   Education Loan Program student loans ultimately backed by the U.S. Department of Education.

25   In February, 2000 plaintiff was hired by CLC-CA as the Vice President of Marketing in its

26   consumer marketing division at CLC-CA's principal place of business in San Diego County,

27   California. Plaintiff eventually was promoted to the position of President of Consumer

28   Marketing and was responsible for a staff of 200-300 employees in his department. Plaintiff

worked for CLC-CA for almost eight years, until November 12, 2007 when he was terminated.

First Amended Complaint

7. For valuable consideration, plaintiff acquired 300,000 shares of CLC-CA's common stock.

8. At all times relevant to the causes of action alleged herein, CLC-CA was qualified under applicable provisions of the Internal Revenue Code as a Subchapter S corporation. Accordingly, its items of net income and loss have always been reported on the shareholders' individual income tax returns. Katz was the founder of CLC-CA and he was the company's majority shareholder, having beneficial ownership of at least 84.44% of the company's outstanding common shares during the times relevant to this complaint. Katz was, at all relevant times, the Chief Executive Officer of CLC-CA and a member of the company's Board of Directors. Snyder was, at all relevant times, the Executive Vice President of CLC-CA and a member of the company's Board of Directors.

9. On December 3, 2008 CLC-CA submitted a written offer to purchase the common stock held by current and former employees of the company, including plaintiff's shares, at the purchase price and on the other terms described in the offer. Plaintiff believed that the offer was far below the true value of the company's shares and he was not willing to participate in it. On January 5, 2009, by way of a third supplement to its offer to purchase, the company increased the purchase price it was offering for the shares of its common stock held by its current and former employees, although plaintiff still believed the offer was far below the true value of the shares and he remained uninterested in selling.

## I. FIRST CAUSE OF ACTION
### (Against all Defendants for Sale of a Security Induced by Misrepresentation of Material Fact, Corp C §§25401, 25501, 25504)

10. Plaintiff incorporates in this cause of action the allegations of paragraphs 1-9 of the complaint.

11. CLC-CA's offer to purchase its common stock from current and former employees provided only summary profit and loss and balance sheet data for the first nine months of 2008, although the company was involved in financial transactions during the last quarter of the year that significantly impacted its financial performance for the entire year. Some of those transactions were only obliquely referred to in a January 5, 2009 third supplement to the company's offer. Plaintiff and many of the other current and former employee shareholders

3

---

First Amended Complaint

were in no position to evaluate the impact of those transactions on the company's financial

performance for the year.

12.  The third supplement to CLC-CA's offer to purchase its common stock contained the

following information concerning certain transactions involving the purchase and cancellation of

notes from investors in the open market:

> The College Loan Corporation Trust I and College Loan
> Corporation Trust II (collectively the "Trusts") have purchased
> notes from investors on the open market at prices below face value
> and subsequently cancelled those notes. As of December 19, 2008,
> the Trusts purchased $30,925,000 in outstanding notes for
> $23,719,250. Since that time, the Trusts have purchased an
> additional $62,700,000 in outstanding notes for $43,263,000. The
> Trusts may continue to purchase additional notes at prices below
> face value in the future. See the discussion under the heading
> *"Purchase and Cancellation of Notes"* in the first Supplement, as
> modified by the Second Supplement.

13.  On January 15, 2009 CLC-CA emailed each of its shareholders, including plaintiff, an

estimate of the shareholder's share of the company's pass-through income and loss for the year

ended 2008.  The document sent to plaintiff had the following heading:

> Shareholder Summary of State Withholding Tax-Updated for 12.31.08 transactions
> College Loan Corporation
> For the Tax Year Ended December 31, 2008
>
> Shareholder              Robert LaBreche
> Ownership %                   2.5964%

The shareholder summary document CLC-CA emailed to plaintiff informed him that his share of

estimated total taxable income of the company for the tax year ended December 31, 2008 was

$908,495.00.  CLC-CA had made no distributions of income to its shareholders during 2008.

Plaintiff assumed that the estimate in the shareholder summary document of his share of the

company's 2008 taxable income included the effects of all transactions the company had been

involved in for that year, including those transactions described in the third supplement to CLC-

CA's offer to purchase its common stock from its current and former employees.  Plaintiff had

neither the professional background and expertise nor sufficient information to make his own

calculation of the impact on the company's financial statements of the transactions involving the

4

First Amended Complaint

1   purchase and cancellation of the notes from investors in the open market that were described in

2   the third supplement to the company's offer to purchase its stock, and he assumed that CLC-CA

3   had done that in preparing the estimate of his pass-through tax liability.

4   14. The deadline for each of the current and former employees of CLC-CA to accept the

5   company's offer to purchase their shares was January 21, 2009. In numerous telephone

6   conversations during the week prior to the deadline Katz pressured plaintiff to sell his stock,

7   informing plaintiff that the company expected to have a lot of tax liability for 2009 and that there

8   was no assurance that there would be any distributions to the shareholders to allow them to pay

9   their share of the tax liability. The clear implication from Katz's comments during the calls was

10   that if plaintiff refused to sell his shares, Katz would use his power as the majority shareholder to

11   prevent the corporation from making distributions even if the corporation was having a profitable

12   year and was able to make them, but that plaintiff would be faced with paying income taxes on

13   his share of the company's pass-through income even though he never would receive any of it.

14   Then, shortly before the offer deadline, Snyder telephoned plaintiff and during a lengthy

15   telephone conversation he urged plaintiff to accept the company's offer and asked plaintiff

16   several times if he really wanted to risk personal bankruptcy by holding on to his stock when

17   there was no assurance that there would be any distributions by the company to cover the

18   expected "phantom income" that the shareholders would have to pay taxes on for 2009.

19   15. Plaintiff consulted with his C.P.A. concerning his tax exposure in light of the estimate he

20   had received from the company of his share of CLC-CA's pass-through income and loss for

21   2008 and concluded that, in light of his other 2008 tax events, his income tax exposure for the

22   year was minimal. In light of such determination plaintiff calculated that if he accepted the

23   company's offer to purchase his shares, although he did not want to do so and felt coerced,

24   extorted and pressured to do so by the veiled threats of bankruptcy if he did not accept the offer,

25   he would make at least enough on the transaction after taxes, including income taxes on his share

26   of CLC-CA's 2008 pass-through income, to allow him to move on with his life and put this

27   sordid episode behind him. Plaintiff reluctantly acquiesced to the pressure and the veiled threats

28   he was getting from the company, its majority shareholder and its executive officers, and

5

First Amended Complaint

1  plaintiff accepted the company's offer to purchase his shares in CLC-CA and sold his shares

2  back to the company.

3     16.  In April, 2009 CLC-CA sent plaintiff his Form K-1 reflecting that plaintiff's actual share of

4  the company's pass-through income for 2008 was $1,654,158.  Plaintiff was facing income tax

5  liability for 2008 of several hundred thousand dollars rather than the minimal income tax liability

6  he expected based on the estimate of his share of CLC-CA's pass-through income for 2008 he

7  was given by the company in January.

8     17. CLC-CA's purchase of plaintiff's shares of the company's stock was by the means of a

9  written communication which included an untrue statement of a material fact in that by sending

10  the document to plaintiff, defendant represented that the estimate of the plaintiff's share of the

11  company's pass-through income and loss for the year ended 2008 as set forth in the shareholder

12  summary document was a reasonable estimate.  However, as described above in this complaint,

13  such estimate was unreasonably and grossly understated and untrue.  Further, CLC-CA's

14  purchase of plaintiff's shares of the company's stock was by the means of a written

15  communication which omitted to state material facts necessary in order to make the statements

16  made, in light of the circumstances under which they were made, not misleading, in that, (i) as

17  described above, CLC-CA omitted to report profit and loss and balance sheet data for the last

18  quarter of 2008 although the omission of such data made the profit and loss data and balance

19  sheet data reported in the offer misleading since the company had been involved in significant

20  financial transactions during the last quarter that materially impacted the company's financial

21  performance for the entire year; (ii) the third supplement to the company's offer disclosed certain

22  significant transactions involving the purchase and cancellation of notes from investors in the

23  open market, as described above, but it omitted to state how those transactions impacted the

24  company's financial statements and its performance, and plaintiff did not have the expertise nor

25  sufficient information to make his own calculation of the impact of those transactions on the

26  company's financial statements or its performance; (iii) the company's offer failed to disclose

27  that the company's directors and executive officers knew that the company would make highly

28  extraordinary profits in 2009 from transactions that were already planned; (iv) the company's

offer failed to disclose that CLC-CA intended to merge with CLC-NV and that CLC-CA would

8

First Amended Complaint

1  cease to exist and that such merger, and the transactions planned by the company in anticipation

2  of the merger, were highly likely to significantly increase the value of the company's shares,

3  although this information was known by the company's directors and executive officers; and, (v)

4  the company's offer failed to disclose that if plaintiff accepted the company's offer and sold his

5  shares back to the company, the company would nevertheless hold plaintiff and each of the other

6  offeree/selling shareholders liable to pay income tax on a prorate share of the company's pass-

7  through income and loss for 2009, even though such liability would be impacted by transactions

8  and events already planned but that would not occur until after the company bought back such

9  shares.  In addition to the foregoing, CLC-CA's purchase of plaintiff's shares of the company's

10  stock was by the means of other written communications which included untrue statements of

11  material facts and which omitted to state material facts necessary in order to make the statements

12  made, in light of the circumstances under which they were made, not misleading.

13    18.  Plaintiff did not know that the CLC-CA's estimate of the plaintiff's share of the company's

14  pass-through income and loss for the year ended 2008 as set forth in the shareholder summary

15  document was untrue and was not a reasonable estimate, and plaintiff did not know of the other

16  untrue statements of material facts.  Further, plaintiff did not know (i) that CLC-CA's omission

17  to report profit and loss and balance sheet data for the last quarter of 2008; (ii) that CLC-CA's

18  omission to state how the transactions involving the purchase and cancellation of notes from

19  investors in the open market impacted the company's financial statements; (iii) that CLC-CA's

20  failure to disclose that the company's directors and executive officers knew that the company

21  would make highly extraordinary profits in 2009 from transactions that were already planned;

22  (iv) that CLC-CA'S failure to disclose that the company intended to merge with CLC-NV and

23  that CLC-CA would cease to exist and that such merger, and the transactions planned by the

24  company in anticipation of the merger, were highly likely to affect the value of their shares; (v)

25  that CLC-CA's failure to disclose that if plaintiff accepted the company's offer and sold his

26  shares back to the company, the company would nevertheless hold plaintiff and each of the other

27  offeree/selling shareholders liable to pay income tax on a prorate share of the company's pass-

28  through income and loss for 2009, even though such liability would be impacted by transactions

and events already planned but that would not occur until after the company bought back such

7

First Amended Complaint

1  shares, and plaintiff did not know that the company's other omissions to state material facts

2  made the company's other statements misleading. If plaintiff had known that the CLC-CA's

3  estimate of the plaintiff's share of the company's pass-through income and loss for the year

4  ended 2008 was untrue and was not a reasonable estimate and if plaintiff had known that the

5  other material facts omitted by CLC-CA made the company's other statements misleading,

6  plaintiff would not have sold his CLC-CA stock to the company.

7     19. CLC-CA's conduct as described in this complaint was in violation of §25401 of the

8  Corporations Code and CLC-NV is liable to plaintiff for damages as specified under §25501 of

9  the Corporations Code since CLC-CA ceased to exist when the merger took effect and CLC-NV,

10  as the surviving corporation, has all of CLC-CA's liabilities. Plaintiff is entitled to recover the

11  difference between (1) the value of his shares in CLC-CA at the time of the filing of the

12  complaint plus the amount of any income received on them since the sale and (2) the price at

13  which the security was sold plus interest at the legal rate from the date of sale. On information

14  and belief, plaintiff alleges that his damages are at least $4,500,000. Plaintiff seeks damages

15  according to proof.

16     20. At all relevant times Katz directly or indirectly controlled CLC-CA by virtue of his

17  beneficial ownership of a majority of the shares of the company, and he was a principal

18  executive officer and a director of the company at all relevant times. Snyder was a principal

19  executive officer and a director of the company at all relevant times. Further, by their actions as

20  alleged herein, Katz and Snyder materially assisted CLC-CA in its violation of §25401 of the

21  Corporations Code. Under §§25504 and 25504.1 of the Corporations Code, Katz and Snyder are

22  also liable for plaintiff's damages jointly and severally with and to the same extent as CLC-NV.

23     II. SECOND CAUSE OF ACTION
   (Against Katz for Breach of his Fiduciary Duties as Majority Shareholder, as a Director and as
24  an Officer of CLC-CA)

25     21. Plaintiff incorporates in this cause of action the allegations of paragraphs 1-20 of the

26  complaint.

27     22. As a result of his power as the majority shareholder of CLC-CA, Katz could and did

28  control every aspect of the management of CLC-CA. The corporation's other officers and

8

First Amended Complaint

1   directors essentially served at his pleasure and did his bidding. Snyder's telephone call to

2   plaintiff in which Snyder threatened plaintiff with bankruptcy if plaintiff did not accept the

3   company's offer to buy plaintiff's shares was instigated by Katz to achieve his own purpose and

4   end, which was to force plaintiff to sell his shares back to the company at a price far below their

5   true value.

6   23.  Since November 12, 2007 Katz has used his power as the majority shareholder to deny the

7   minority shareholders a fair share of the corporate profits and its ongoing value. The

8   corporation's Subchapter S tax status was a handy tool for Katz to use as a sword to coerce and

9   control minority shareholders for his own ultimate financial benefit. When the company had a

10  profitable year, Katz was able to control and determine whether or not the company distributed

11  earnings to the shareholders and how much would be distributed. However, whether or not the

12  company made a distribution to shareholders, each shareholder was nevertheless obligated to pay

13  income tax on his or her share of the company's pass-through income and loss each year. If the

14  company for any reason did not make a distribution sufficient to cover each shareholder's share

15  of the company's pass-through income and loss, it might loan funds to the shareholders to enable

16  them to pay their taxes and take back promissory notes. There was a limited market for shares in

17  CLC-CA; and the company's shares were unregistered and subject to elaborate restrictions under

18  a shareholder agreement that all of the company's shares were immediately subject to upon

19  issuance. This created a situation that was rife with opportunities for abuse by the majority

20  shareholder, and Katz took advantage of it when CLC-CA made the offer to purchase the shares

21  of its current and former employees.

22  24.  At the time of CLC-CA's offer to purchase the shares of its current and former employees,

23  most of the offerees, including the plaintiff, were former employees of the company who were

24  terminated during 2007. With respect to those offerees, the company had chosen not to exercise

25  its option to purchase their shares under the shareholder agreement when they were terminated

26  and they were not under any obligation to accept the company's offer to buy their stock.

27  25.  Like many of the other similarly situated offerees, in the face of the company's offer to

28  purchase the plaintiff's shares, plaintiff was whipsawed by the veiled threats by the majority

    shareholder, and by the express threats communicated to him by Snyder at the behest of Katz,

9

First Amended Complaint

1  that plaintiff would find himself in an impossible financial situation and would be bankrupted if

2  he refused the company's offer. Katz could and very well might use his power as the majority

3  shareholder to nix any distributions to the shareholders even if the company had a profitable

4  year, but the shareholders would remain obligated to pay potentially draconian income taxes on

5  their respective shares of the company's pass-through income and loss for 2009 and in future

6  years. By coercing the minority shareholders to accept the company's offer to purchase their

7  shares Katz would reap the benefit of company profits that, since November 12, 2007, had

8  continuously been pushed forward and never distributed to the shareholders as a result of actions

9  by the majority shareholder in breach of his fiduciary duties to the minority shareholders,

10  including plaintiff.

11  26. In acting as described above, Katz breached his fiduciary duty owed to plaintiff and the

12  other minority shareholders to use his ability to control the corporation in a just, fair and

13  equitable manner. Instead, Katz used his power to control the corporation to promote a scheme

14  that primarily benefitted himself to the detriment of plaintiff and the other minority shareholders.

15  Further, Katz knew about the untrue statements of material fact made by or in behalf of CLC-

16  CA, and about the omissions to state material facts necessary in order to make the statements

17  made by or in behalf of CLC-CA, in light of the circumstances under which they were made, not

18  misleading, in connection with the purchase of plaintiff's shares of the company's stock and

19  Katz failed to disclose that information to plaintiff or to any of the other current and former

20  employee shareholders. Katz's failure to disclose such material facts to plaintiff and the other

21  offeree/sellers, and his suppression and failure to disclose the omissions to state material facts,

22  constituted a breach of his fiduciary duties as a director and officer of the company.

23  27. As a proximate result of the acts of Katz, as above described, plaintiff has suffered

24  damages. On information and belief, plaintiff alleges that his damages are at least $4,500,000.

25  Plaintiff seeks damages according to proof.

26  28. The aforementioned conduct of Katz was done with the intention of depriving plaintiff and

27  the other minority shareholders of property or legal rights or otherwise causing injury to plaintiff,

28  and was despicable conduct that subjected the plaintiff to a cruel and unjust hardship in

conscious disregard of the plaintiff's rights, and was an intentional misrepresentation, deceit or

10

First Amended Complaint

1   concealment of a material fact known to the defendant with the intention on the part of the

2   defendant of thereby depriving the plaintiff of property or legal rights or otherwise causing

3   injury, so as to justify an award of exemplary and punitive damages.

### III.  THIRD CAUSE OF ACTION
(Against CLC-NV for CLC-CA's Intentional Misrepresentation and Suppression of Material Facts)

6   29.  Plaintiff incorporates in this cause of action the allegations of paragraphs 1-28 of the

7   complaint.

8   30.  CLC-CA's purchase of plaintiff's shares was induced by representations made by the

9   company, acting through its directors and officers, that were false, and by representations that

10  omitted to state material facts that made statements actually made misleading and untrue.

11  31.  When such statements were made, CLC-CA, acting through its directors and officers,

12  knew such representations to be false and knew that such statements actually made were

13  misleading and untrue in light of the omissions to state material facts.

14  32.  When such statements were made, CLC-CA, acting through its directors and officers, made

15  the false representations and the representations that omitted to state material facts that made

16  statements actually made misleading and untrue with the intention to deceive and defraud the

17  plaintiff and to induce the plaintiff to act in reliance on such representations and misleading and

18  untrue statements and accept the company's offer to buy plaintiff's shares of stock.

19  33.  At the time these false representations were made and at the time the misleading and untrue

20  statements were made and at the time plaintiff acted in reliance upon them, plaintiff was ignorant

21  of their falsity and untruth and believed them to be true.  In reliance upon such representations

22  and statements, the plaintiff was induced to and did accept the company's offer to buy plaintiff's

23  shares of stock.  Had the plaintiff known the actual facts, he would not have taken such action.

24  The plaintiff's reliance on the company's representations and statements was justified because

25  plaintiff had no other source of information regarding the facts relevant to his decision to accept

26  the company's offer.

27

28

11

First Amended Complaint

34. As a proximate result of the fraudulent conduct of the company, acting through its directors and officers as alleged herein, the plaintiff was damaged in an amount according to proof. On information and belief, plaintiff alleges that his damages are at least $4,500,000.

35. The aforementioned conduct of CLC-CA, acting through its directors and officers, was done with the intention of depriving plaintiff of property or legal rights or otherwise causing injury, was despicable conduct that subjected the plaintiff to a cruel and unjust hardship in conscious disregard of the plaintiff's rights, and was an intentional misrepresentation, deceit or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving the plaintiff of property or legal rights or otherwise causing injury, so as to justify an award of exemplary and punitive damages.

## IV. FOURTH CAUSE OF ACTION
### (Against CLC-NV for CLC-CA's Negligent Misrepresentation of Facts)

36. Plaintiff incorporates in this cause of action the allegations of paragraphs 1-35 of the complaint.

37. When CLC-CA, acting through its directors and officers, made these representations and misleading and untrue statements, it had no reasonable ground for believing them to be true.

38. When CLC-CA, acting through its directors and officers, made these representations and misleading and untrue statements, it did so with the intention of inducing the plaintiff to act in reliance on them and accept the company's offer to buy plaintiff's shares of stock.

39. As a proximate result of the conduct of the company, acting through its directors and officers as alleged herein, the plaintiff was damaged in an amount according to proof. On information and belief, plaintiff alleges that his damages are at least $4,500,000.

## DEMAND FOR JUDGMENT

WHEREFORE, plaintiff demands judgment as follows:

(1) On the first cause of action, plaintiff demands judgment against defendants CLC-NV, Cary Katz and Steven Snyder, jointly and severally, for damages in an amount according to proof, for interest on the judgment as allowed by law from the date of judgment until paid and for costs of suit;

12

1    (2)  On the second cause of action, plaintiff demands judgment against defendant Cary Katz for

2    actual damages in an amount according to proof, for exemplary and punitive damages in an

3    amount determined by the court or jury, for interest on the judgment as allowed by law from the

4    date of judgment until paid and for costs of suit;

5    (3)  On the third cause of action, plaintiff demands judgment against defendant CLC-NV for

6    actual damages in an amount according to proof, for exemplary and punitive damages in an

7    amount determined by the court or jury, for interest on the judgment as allowed by law from the

8    date of judgment until paid and for costs of suit;

9    (4)  On the fourth cause of action, plaintiff demands judgment against defendant CLC-NV for

10   actual damages in an amount according to proof, for interest on the judgment as allowed by law

11   from the date of judgment until paid and for costs of suit.

12   Plaintiff further seeks such other and further relief as the court deems proper.

13                                        Respectfully submitted,

14

15

16                                        Gerald P. Burleson
                                          Attorney for Plaintiff
17                                        ROBERT LABRECHE

18

19

20

21

22

23

24

25

26

27

28

                                          13

**EXHIBIT C**

1   BROWNE WOODS GEORGE LLP
    Eric M. George (State Bar No. 166403)
2   egeorge@bwgfirm.com
    Sonia Y. Lee (State Bar No. 191837)
3   slee@bwgfirm.com
    2121 Avenue of the Stars, 24th Floor
4   Los Angeles, CA 90067
    Telephone: 310.274.7100
5   Facsimile: 310.275.5697

6   Attorneys for Defendants
7   College Loan Corporation, Cary Katz, Steven Snyder

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10               COUNTY OF SAN DIEGO, CENTRAL DISTRICT

11

12   ROBERT LABRECHE,                    Case No. 37-2009-00098983-CU-FR-CTL
                                         Assigned to Judge David B. Oberholtzer –
13            Plaintiff,                 Dept. C-67

14      vs.
                                         **DEFENDANTS' ANSWER TO THE**
15   COLLEGE LOAN CORPORATION,           **UNVERIFIED FIRST AMENDED**
     CARY KATZ, STEVEN SNYDER and        **COMPLAINT**
16   DOES 1-50

17            Defendants.                Complaint filed September 24, 2009

18

19

20

21

22

23

24

25

26

27

28

238350_1.DOC

**DEFENDANTS' ANSWER TO THE UNVERIFIED FIRST AMENDED COMPLAINT**


EXHIBIT C

**FILED**
CIVIL BUSINESS OFFICE
CENTRAL DIVISION

2009 NOV -9 PM 2:4

SAN DIEGO COUNTY, CA
SUPERIOR COURT

1        Defendants College Loan Corporation, a Nevada corporation, Cary Katz, an individual,

2   and Steven Snyder, an individual (collectively, "Defendants") for themselves, and for no other

3   person or entity, respond to the unverified First Amended Complaint ("FAC") filed by plaintiff

4   Robert LaBreche ("Plaintiff"), as follows:

5        Pursuant to Section 431.30(d) of the *Code of Civil Procedure*, Defendants generally deny

6   each and every allegation contained in the FAC, deny that Plaintiff sustained damages in the

7   amount alleged, or any other amount, and further deny that Plaintiff is entitled to the relief

8   demanded or any other relief at all by reason of any action, or omission, or breach on the part of

9   Defendants.

10        Without waiving the foregoing, as and for their affirmative defenses, Defendants allege as

11   follows:

12

13        **FIRST AFFIRMATIVE DEFENSE**

14      1.   The FAC, and each and every alleged claim for relief therein, fails to state a cause

15   of action upon which relief can be granted.

16

17        **SECOND AFFIRMATIVE DEFENSE**

18      2.   Plaintiff is barred from recovering on the FAC, and each and every alleged claim

19   for relief therein, because Plaintiff's damages, if any, were sustained as a direct and proximate

20   result of the intervening and superseding acts and/or omissions of persons or entities other than

21   Defendants, that were outside the control of Defendants.

22

23        **THIRD AFFIRMATIVE DEFENSE**

24      3.   The FAC, and each and every alleged claim for relief therein, is barred by the

25   doctrine of laches.

26

27        **FOURTH AFFIRMATIVE DEFENSE**

28      4.   The FAC, and each and every alleged claim for relief therein, is barred by the

238350_1.DOC

-1-

1    doctrine of unclean hands.

2

### FIFTH AFFIRMATIVE DEFENSE

4         5.    The FAC, and each and every alleged claim for relief therein, is barred by the

5    doctrine of estoppel.

6

### SIXTH AFFIRMATIVE DEFENSE

8         6.    The FAC, and each and every alleged claim for relief therein, is barred by the

9    doctrine of waiver.

10

### SEVENTH AFFIRMATIVE DEFENSE

12         7.    The FAC, and each and every alleged claim for relief therein, is barred by

13    Plaintiff's own misconduct.

14

### EIGHTH AFFIRMATIVE DEFENSE

16         8.    The FAC, and each and every alleged claim for relief therein, is barred because

17    Defendants at all times acted in conformity with, and reliance upon, applicable rules, regulations

18    and standards.

19

### NINTH AFFIRMATIVE DEFENSE

21         9.    To the extent Defendants engaged in any of the acts alleged in the FAC, such acts

22    were excused, justified, and/or privileged.

23

### TENTH AFFIRMATIVE DEFENSE

25         10.    The FAC, and each and every alleged claim for relief therein, is barred by

26    Plaintiff's and/or its agent's consent to the alleged acts and omissions.

27

28

1

## ELEVENTH AFFIRMATIVE DEFENSE

2      11.    The FAC, and each and every alleged claim for relief therein, fails to state a cause

3 of action upon which relief can be granted because the claims are barred by the statute of

4 limitations.

5

6

## TWELFTH AFFIRMATIVE DEFENSE

7      12.    Plaintiff's claims for punitive damages are barred by the due process clauses of the

8 Fifth and Fourteenth Amendments to the Constitution of the United States and Article 1, Section

9 7 of the California Constitution, in that the standards for awarding punitive damages are vague,

10 fail to limit properly the discretion of the trier of fact as to the amount of punitive damages which

11 may be awarded, and violate the requirement that punishable conduct must be defined and have

12 the penalty therefor set prior to commission of the conduct.

13

14

## THIRTEENTH AFFIRMATIVE DEFENSE

15      13.    The FAC, and each and every claim for relief therein, is barred because Plaintiff

16 lacks standing to sue.

17

18

## FOURTEENTH AFFIRMATIVE DEFENSE

19      14.    The FAC, and each and every claim for relief therein, is barred because the

20 damages allegedly incurred by Plaintiff, which Defendants specifically and expressly deny,

21 cannot be ascertained with reasonable certainty.

22

23

## FIFTEENTH AFFIRMATIVE DEFENSE

24      15.    If Defendants are liable to Plaintiff in any sum, and any liability is denied, then

25 Defendants are entitled to set-off or offset the amount of monies owed by Plaintiff to Defendants.

26

27

## SIXTEENTH AFFIRMATIVE DEFENSE

28      16.    Defendants reserve the right to amend this answer, to assert additional affirmative

238350_1.DOC

-3-

1    defenses, and to supplement, alter, or change this answer upon discovery and investigation in this

2    matter.

3

4           WHEREFORE, Defendants pray for judgment as follows:

5           1.      That Plaintiff recover nothing on his FAC or otherwise;

6           2.      That the FAC, and each cause of action alleged therein, be dismissed, with

7    prejudice;

8           3.      For costs of suit incurred herein; and

9           4.      For such other and further relief as the Court deems just and proper.

10

11   Dated: November 9, 2009                        BROWNE WOODS GEORGE LLP
                                                     Eric M. George
12                                                   Sonia Y. Lee

13                                                   By _____
14                                                            Sonia Y. Lee
                                                     Attorneys for Defendants
15                                                   College Loan Corporation, Cary Katz, Steven Snyder

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO THE UNVERIFIED FIRST AMENDED COMPLAINT

1          **PROOF OF SERVICE**

2     STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3          I am employed in the County of Los Angeles, State of California. I am over the age of 18
      and not a party to the within action; my business address is 2121 Avenue of the Stars, 24th Fl.,
4     Los Angeles, CA 90067.

5          On November 9, 2009, I served the foregoing document described as: **DEFENDANTS'
      ANSWER TO THE UNVERIFIED FIRST AMENDED COMPLAINT** on the parties in this
6     action by serving:

7     Gerald P. Burleson, Esq.
      5752 Oberlin Drive
8     Suite 106
      San Diego, CA 92121
9     Tel. (858) 794-4805
      Fax (866) 885-6079
10

11    ☒    **By Envelope** - by placing ☐ the original ☒ a true copy thereof enclosed in sealed
      envelopes addressed as above and delivering such envelopes:
12

13    ☒    **By Mail:** As follows: I am "readily familiar" with this firm's practice of collection and
      processing correspondence for mailing. Under that practice it would be deposited with the U.S.
14    postal service on that same day with postage thereon fully prepaid at Los Angeles, California in
      the ordinary course of business. I am aware that on motion of the party served, service is
15    presumed invalid if postal cancellation date or postage meter date is more than one day after date
      of deposit for mailing in affidavit.

16
      Executed on November 9, 2009, at Los Angeles, California.
17

18    ☒    **STATE:** I declare under penalty of perjury under the laws of the State of California that
      the above is true and correct.
19

20

21                        _Kristine Diane De Rosa_
                          KRISTINE DIANE DE ROSA
22

23

24

25

26

27

28

**EXHIBIT D**

```
 1          SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2         FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION
 3     _____
                                    )
 4     ROBERT LABRECHE,             )
                                    )
 5                  Plaintiff,      )      Case No.
                                    )   37-2009-00098983
 6         vs.                      )  .  CU-FR-CTL
                                    )      VOLUME I
 7     COLLEGE LOAN CORPORATION, CARY )
       KATZ, STEVEN SNYDER and DOES  )
 8     1-50,                        )
                                    )
 9                  Defendants.     )
       _____ )
10
11
12
13
14         Videotaped Deposition of ROBERT LaBRECHE,
15         taken at 402 West Broadway, Suite 700,
16         San Diego, California, commencing at
17         9:38 a.m., Thursday, December 10, 2009,
18         before Kae F. Gernandt, RPR, CSR No.
19         5342.
                                          RECEIVED
20
21                                        JAN 04 2010
22
23                                    Browne Woods George LLP
24
25     PAGES 1 - 297
                                                          1
```


EXHIBIT D

1     SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

3   ——————————————————————————

                          )

4   ROBERT LABRECHE,          )

                          )

5          Plaintiff,    )    Case No.

                          ) 37-2009-00098983

6     vs.                 )    CU-FR-CTL

                          )    VOLUME II

7   COLLEGE LOAN CORPORATION, CARY  )

   KATZ, STEVEN SNYDER and DOES   )

8   1-50,                  )

                          )

9         Defendants.     )

   ——————————————————————————)

10

11

12     Continued Videotaped Deposition of

13     ROBERT LaBRECHE, taken at 402 West

14     Broadway, Suite 700, San Diego,

15     California, commencing at 1:08 p.m.,

16     Monday, December 14, 2009, before

17     Kae F. Gernandt, RPR, CSR No. 5342.

18

19

20

21

22

23

24

25   PAGES 298 - 488

                                               298

1     SUPERIOR COURT OF THE STATE OF CALIFORNIA

2     FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

3   ————————————————————

                            )

4  ROBERT LABRECHE,            )

                            )

5         Plaintiff,      )  Case No.

                            )  37-2009-00098983

6    vs.                  )  CU-FR-CTL

                            )  VOLUME III

7  COLLEGE LOAN CORPORATION, CARY  )

    KATZ, STEVEN SNYDER and DOES   )

8  1-50,                    )

                            )

9         Defendants.     )

   ————————————————————)

10

11

12

13     Continued Videotaped Deposition of

14     ROBERT LaBRECHE, taken at 402 West

15     Broadway, Suite 700, San Diego,

16     California, commencing at 9:09 a.m.,

17     Tuesday, December 15, 2009, before

18     Kae F. Gernandt, RPR, CSR No. 5342.

19

20

21

22

23                        RECEIVED

24                        JAN - 4 2009

25  PAGES 489 - 737

                       Browne Woods George LLP   489

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Robert LaBreche | College Loan Corporation, Cary Katz, and Steven Spyder; |

| (b) County of Residence of First Listed Plaintiff <u>San Diego, CA</u><br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant Nevada<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
|---|---|
| (c) Attorneys (Firm Name, Address, and Telephone Number)<br>Gerald Burleson, Esq.<br>5752 Oberlin Dr., Suite 106<br>San Diego, CA 92121<br>Tel.: 858.794.4805 | Attorneys (If Known)<br>Eric M. George, Esq.<br>Sonia Y. Lee, Esq.<br>BROWNE WOODS GEORGE LLP<br>2121 Avenue of the Stars, 24th Fl.<br>Los Angeles, CA 90067 |

3: 15

CLERK US

**10 CV 0094 JAH WMC**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☒ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                       and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury—Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury—Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1441(a-b)

Brief description of cause:
Breach of California Corp. Code for Misrepresentation, and Breach of Fiduciary Duty

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $4,500,000.00     CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
January 13, 2010

SIGNATURE OF ATTORNEY OF RECORD
Sonia Y. Lee

**FOR OFFICE USE ONLY**

RECEIPT # 9161     AMOUNT $350     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

PB 01-13-10

American LegalNet, Inc.
www.FormsWorkflow.com

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS009161
Cashier ID: mbain
Transaction Date: 01/13/2010
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
----------------------------------
CIVIL FILING FEE
 For: LABRECHE V COLLEGE LOAN CORP
 Case/Party: D-CAS-3-10-CV-000094-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 85800
 Amt Tendered:  $350.00
----------------------------------
 Total Due:      $350.00
 Total Tendered: $350.00
 Change Amt:     $0.00


 There will be a fee of $45.00
 charged for any returned check.
```